UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

FRANCES M. VALLE,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀No. 3:18-CV-141-DCP
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
ANDREW M. SAUL,[1]⠀⠀⠀⠀⠀)
Acting Commissioner of Social Security,⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀Defendant.⠀⠀⠀⠀)

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 21]. Now before the Court are Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 22 & 23] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 24 & 25]. Frances Mary Valle ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Andrew M. Saul ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

## I.⠀⠀⠀PROCEDURAL HISTORY

On September 27, 2012, Plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, alleging disability beginning on July 1, 2011. [Tr. 163–66]. After her application was denied initially and upon reconsideration,

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019, during the pendency of this case. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the Defendant in this case.

Plaintiff requested a hearing before an ALJ. [Tr. 112–13]. A hearing was held on January 16, 2014 before ALJ John Dowling. [Tr. 59–90]. On February 10, 2014, ALJ Dowling found that Plaintiff was not disabled. [Tr. 42–53]. The Appeals Council denied Plaintiff's request for review on February 2, 2015. [Tr. 1–6].

After exhausting her administrative remedies, Plaintiff filed a Complaint with this Court on August 28, 2015, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. *See* [Doc. 1] in *Valle v. Comm'r of Soc. Sec. Admin.*, No. 3:15-cv-388-PLR-HBG; *see also* [Tr. 913–18]. On August 30, 2016, the Court accepted Magistrate Judge Guyton's report and recommendation, and remanded Plaintiff's case with instructions to further consider the opinion of her treating rheumatologist, Nguyet-Anh (Theresa) Tran, M.D., and for a new evaluation of Plaintiff's RFC. *See Valle v. Colvin*, No. 3:15-CV-388-PLR-HBG, 2016 WL 4534875, at *4–5 (E.D. Tenn. July 27, 2016), *report and recommendation adopted by*, 2016 WL 4536877 (E.D. Tenn. Aug. 30, 2016).

On November 10, 2016, the Appeals Council remanded Plaintiff's case to ALJ Mary Ellis Richardson for further proceedings consistent with this Court's Order. [Tr. 909–12].[2] A hearing was held before ALJ Richardson on March 1, 2017. [Tr. 810–40]. On May 23, 2017, ALJ Richardson issued a partially favorable decision, and found Plaintiff to be disabled beginning April 9, 2014—but not prior to that date. [Tr. 779–97]. The Appeals Council denied Plaintiff's request for review on March 15, 2018 [Tr. 764–66], and she subsequently filed a Complaint with this Court

_____

[2] The Appeals Council's remand order stated that Plaintiff filed subsequent claims for Title II and Title XVI disability benefits on August 24, 2015, and consolidated these claims for the ALJ's consideration. [Tr. 911]. However, because the ALJ found that Plaintiff was not disabled from July 1, 2011 until April 9, 2014, and Plaintiff did not apply for supplemental security income until August 24, 2015, her Title XVI claim is not under review.

on April 4, 2018 [Doc. 1].  The parties have filed competing dispositive motions, and this matter

is now ripe for adjudication.

## II.    ALJ FINDINGS

In her May 23, 2017 disability decision, ALJ Richardson made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2.  The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3.  Since the alleged onset date of disability, July 1, 2011, the claimant has had the following severe impairments:  rheumatoid arthritis, depression, and anxiety (20 CFR 404.1520(c) and 416.920(c)).

4.  Since the alleged onset date of disability, July 1, 2011, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d),  404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that prior to April 9, 2014, the date the claimant became disabled, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant could occasionally climb ramps or stairs.  The claimant could never climb ladders, ropes, or scaffolds; could occasionally balance, stoop, kneel, crouch, or crawl.  The claimant could occasionally reach in all directions with both upper extremities; could frequently handle, finger, and feel with bilateral upper extremities. The claimant should avoid all exposure to workplace hazards, such as proximity to moving, mechanical parts or working in high, exposed places. The claimant was able to perform simple and detailed tasks.

6.  After careful consideration of the entire record, the undersigned finds that beginning on April 9, 2014, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant could occasionally climb ramps or stairs.  The claimant could never climb ladders,

ropes, or scaffolds; could occasionally balance, stoop, kneel, crouch, or crawl. The claimant could occasionally reach in all directions with both upper extremities; could frequently handle, finger, and feel with bilateral upper extremities. The claimant should avoid all exposure to workplace hazards such as exposure to moving, mechanical parts or working in high, exposed places. The claimant is able to perform simple and detailed tasks. The claimant would require hourly breaks throughout the workday.

7. Since July 1, 2011, the claimant has been unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

8. Prior to the established disability onset date of April 9, 2014, the claimant was a "younger individual age 45-49". On December 16, 2015, the claimant turned fifty years of age and entered the category of "closely approaching advanced age" (20 CFR 404.1563 and 416.963).

9. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

10. Prior to April 9, 2014, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. Beginning on April 9, 2014, the claimant has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11. Prior to April 9, 2014, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a, 416.969, and 416.969a).

12. Beginning on April 9, 2014, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that existed in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a, 416.969, and 416.969a)

13. The claimant was not disabled prior to April 9, 2014, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 782–96].

III.     **STANDARD OF REVIEW**

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

# IV.     DISABILITY ELIGIBILITY

"Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  A claimant will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.  If claimant is doing substantial gainful activity, he is not disabled.
>
> 2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is

"based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4), -(e) and 416.920(a)(4), -(e). An RFC is the most a claimant can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.    ANALYSIS

Plaintiff challenges the ALJ's found disability onset date, as Plaintiff asserts that the ALJ failed to adequately reconsider Dr. Tran's opinions as directed by the Court's remand order. [Doc. 23 at 4–6]. Plaintiff contends that the ALJ erred in failing to accord controlling weight to Dr. Tran's June 13, 2013 opinions, as they were supported by medically acceptable clinical and laboratory diagnostic techniques, as well as that the opinions were not inconsistent with other substantial evidence. [*Id.* at 7–12].

The Commissioner maintains that substantial evidence supports the ALJ's evaluation of Dr. Tran's opinions, as the ALJ identified specific inconsistencies between the opinions and the medical records, as well as that certain of Dr. Tran's opinions were based primarily on Plaintiff's subjective complaints. [Doc. 25 at 7–11]. Further, the Commissioner asserts that "[t]he ALJ's analysis corrects the errors identified by this Court in its remand order." [*Id.* at 10].

### A.    ALJ's Treatment of Dr. Tran's Opinions

Plaintiff submits that the ALJ "did not make a proper 'controlling weight' analysis[,] nor did the ALJ properly weight the treating physician's opinions after presumably finding the treating

physicians' opinions were not controlling." [Doc. 23 at 14].

Plaintiff first established care with Dr. Tran on August 8, 2012 for treatment of her diagnosed rheumatoid arthritis, and reported tenderness in her right wrist, left elbow, right knee, and right ankle. [Tr. 531]. Plaintiff was prescribed prednisone and continued treatment with Dr. Tran on August 27, 2012 [Tr. 528], October 12, 2012 [Tr. 526], and November 21, 2012 [Tr. 566]. During a March 15, 2013 follow-up examination with Dr. Tran, Plaintiff reported tenderness in her elbows, right ankle, and hip, but did not display any swelling, warmth, or erythema in any of her joints. [Tr. 671–73]. Additionally, Plaintiff displayed limited range of motion in her bilateral upper extremities. [Tr. 671]. Plaintiff returned to see Dr. Tran on July 31, 2013 [Tr. 695], September 24, 2013 [Tr. 692], and December 2, 2013 [Tr. 686]. Although Plaintiff reported stiffness during her appointment on December 2, 2013, she had no tenderness, swelling, or erythema in any of her joints, as well as full range of motion in all of her joints except for reduced range of motion in her bilateral elbows. [Tr. 686–88]. The ALJ characterized Plaintiff's treatment with Dr. Tran during this time period as Plaintiff seeking "treatment for her rheumatoid arthritis with intermittent flares," but objective medical findings "were consistent with the ability to perform a range of sedentary work." [Tr. 786].

Dr. Tran completed a Medical Questionnaire and Medical Source Statement on June 13, 2013. [Tr. 677–83]. In the Medical Questionnaire, Dr. Tran stated that Plaintiff's primary diagnosis was rheumatoid arthritis, and that her prognosis was fair while she continued to receive immune suppressant drugs. [Tr. 677]; *see* [Tr. 1101]. However, Dr. Tran opined that Plaintiff was not capable of sustaining employment on a regular basis until her disease was under better control, due to her prolonged morning stiffness, pain, and swelling of joints. [*Id.*]. Further, Dr. Tran stated that Plaintiff's arthritis resulted in the need for frequent breaks, of ten to fifteen minutes every

hour, in order to stretch to prevent stiffness. [Tr. 1101]. On July 25, 2013, Dr. Tran added that Plaintiff's hourly breaks needed to be "away from [her] workstation," and noted that Plaintiff has long-standing rheumatoid arthritis and deformities in her elbows that would make it difficult for her to perform usual upper extremity duties. [Tr. 677].

In the accompanying Medical Source Statement, Dr. Tran opined that Plaintiff could occasionally lift and carry up to twenty pounds; and that she could sit, stand, and walk for one hour at a time without interruption and for three to four hours total [Tr. 1094–95], including a separate break time away from her work station to stretch every one hour [Tr. 679].[3] Dr. Tran stated that these limitations were supported by Plaintiff's March 13, 2013 laboratory results, which were a marker for active disease. [Tr. 679, 1095]. Next, Dr. Tran opined that Plaintiff could occasionally reach, handle, finger, feel, and push/pull with both hands, and that she could occasionally operate foot controls with both feet. [Tr. 680, 1096]. With respect to Plaintiff's postural activities, Dr. Tran found that Plaintiff could occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl, but that she could never climb ladders or scaffolds. [Tr. 681, 1097]. Dr. Tran stated that her opinion regarding Plaintiff's use of her hands and feet, as well as postural limitations, was due to clinical findings, Plaintiff's report of her activity, and overall clinical impression. [Tr. 680–81, 1096–97]. Dr. Tran found that Plaintiff could never be exposed to unprotected heights or moving mechanical parts; but that she could occasionally be exposed to operating a motor vehicle, humidity and wetness, dust, odors, fumes and pulmonary irritants, extreme cold and heat, and vibrations. [Tr. 682, 1098]. Lastly, Dr. Tran indicated that the Medical Source Statement

---

[3] The Commissioner suggests, and the Court agrees, that this notation was presumably added at the same time as Dr. Tran's addition to Plaintiff's Medical Questionnaire on July 25, 2013.

contained her opinion about only Plaintiff's current limitations.  [Tr. 683, 1099].

Dr. Tran also wrote a letter on January 2, 2014 detailing that Plaintiff "would benefit from disability benefits given chronic rheumatoid arthritis and osteoarthrosis," as well as that "[t]hese conditions limit her ability to work right now."  [Tr. 1333].  Then, on April 9, 2014, Dr. Tran wrote another letter stating that Plaintiff "has severe rheumatoid arthritis that is currently not well controlled," and that "[s]he has pain in the hands, wrists, shoulders, hips, and knees.  [Tr. 1351].  Dr. Tran noted that Plaintiff's pain "is aggravated by bearing weight unilaterally on one side when using a cane," and that Plaintiff has difficulty walking even when using the cane.  [*Id.*].  Lastly, Dr. Tran stated that Plaintiff's use of a wheelchair would hopefully be for a short-term period of two to three months, but it "may be needed intermittently for an indefinite period of time."  [*Id.*].

In the disability decision, the ALJ reviewed the respective medical opinions provided by Dr. Tran, and first afforded little weight to the June 13, 2013 Medical Source Statement.  [Tr. 788].  First, the ALJ found that "the ability to perform a reduced range of light work implied by the lifting, carrying, walking and standing limitations is too optimistic," and the overall record reflected that Plaintiff should be limited to no more than sedentary exertion stretching back to the alleged onset date.  [*Id.*].  However, the ALJ also found that Dr. Tran's opined occasional manipulative restrictions were overly restrictive "in light of several factors," including Plaintiff's reported daily activities.  [*Id.*].  The ALJ noted that Plaintiff "engaged in a wide range of activities of daily living," such as reading the Bible, reporting that she sings and sends text messages, using a computer and accessing Facebook, driving, and working two days a week in early 2017.  [*Id.*].  Therefore, the ALJ found that Plaintiff could frequently handle, finger, and feel with both upper extremities.  [*Id.*].

The ALJ also afforded little weight to Dr. Tran's accompanying Medical Questionnaire on June 13, 2013.  [Tr. 788].  The ALJ afforded little weight to the opinion "before the established onset date insofar as it suggests [Plaintiff] was incapable of working at that time because [Dr. Tran] does not mention any objective medical findings in support of this opinion."  [*Id.*].  Additionally, the ALJ noted that the issue of disability is reserved to the Commissioner, and the opinion was not consistent with Plaintiff's reported activities of daily living.  [*Id.*].  Similarly, the ALJ assigned little weight to Dr. Tran's January 2, 2014 letter because the issue of disability is reserved for the Commissioner, the opinion relied too heavily on Plaintiff's subjective complaints and was inconsistent with her activities of daily living, and was vague and did not specify the degree of opined limitations.  [Tr. 789].

The ALJ, however, assigned great weight to Dr. Tran's "brief letter" on April 9, 2014, first noting that when compared to Dr. Tran's past opinions, "this letter described a worsening of [Plaintiff's] physical condition . . . further supporting the conclusion that [Plaintiff's] overall physical condition had worsened in the spring of 2014."  [Tr. 790].  The ALJ found that this opinion was "consistent with the medical signs and findings" that demonstrated a worsening of Plaintiff's overall condition, which the ALJ previously discussed while comparing August 12, 2013, January 2, 2014, and July 29, 2014 opinions from Plaintiff's treating physician, Susan Dowdy, M.D.  [Tr. 790]; *see* [Tr. 789].  When discussing Dr. Tran's April 9, 2014 opinion, the ALJ noted that Plaintiff's sedimentation rate on March 10, 2014 was 32, and treatment notes from Dr. Tran on April 7, 2019 stated that Plaintiff has had "significant worsening" of her rheumatoid arthritis with several swollen joints that required increased medication.  [Tr. 790]; *see* [Tr. 1345].  Additionally, the ALJ noted Dr. Tran's specialty in rheumatology as especially relevant due to Plaintiff's primary medical impairment.  [Tr. 790].

11

Plaintiff challenges the ALJ's assignment of little weight to the June 13, 2013 Medical Source Statement and accompanying Medical Questionnaire. Plaintiff claims that the ALJ erred in not assigning these opinions controlling weight because the ALJ did not find that Dr. Tran's opinions were not supported by acceptable clinical and laboratory diagnostic techniques, or that the opinions were inconsistent with other substantial evidence. Plaintiff asserts that there was not a contradictory rheumatologist opinion and the ALJ failed to properly explain what evidence was inconsistent with the opinions. Further, Plaintiff claims that the ALJ failed to then properly analyze the factors set forth in 20 C.F.R. § 404.1527(c)(2).

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record, it must be given "controlling weight." 20 C.F.R. §§ 404.1527(c); 416.927(c)(2).[4] When an opinion does not garner controlling weight, the appropriate weight to be given to the opinion will be determined based upon the length of treatment, frequency of examinations, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. *Id.*

The ALJ is not required to explain how he considered each of these factors, but must

___

[4] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017). The new regulations eliminate the term "treating source," as well as what is customarily known as the treating physician rule. As Plaintiff's application was filed before March 27, 2017, the treating physician rule applies. *See id.* §§ 404.1527; 416.927.

nonetheless give "good reasons" for giving a treating physician's opinion less than controlling weight. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011); *see also Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (holding "good reasons" must be provided "that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight") (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2)).

A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996).

Here, the ALJ did not engage in the "two-step" evaluation process required for evaluating the opinions of Plaintiff's treating rheumatologist, Dr. Tran. *See Cadle v. Comm'r of Soc. Sec.*, No. 5:12-CV-3071, 2013 WL 5173127, at *5 (N.D. Ohio Sept. 12, 2013). The ALJ failed to first determine whether Dr. Tran's June 13, 2013 opinions were entitled to controlling weight by considering whether her opinions were "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). In *Gayheart*, the Sixth Circuit explained that although "the ALJ provided a modicum of reasoning" for assigning little weight to a treating source's opinion, these reasons were relevant to how the "opinions should be weighed *after* determining they were not controlling." *Id.* at 377. As this District has explained:

Thus, in light of Sixth Circuit jurisprudence, the Court finds that the regulations require an ALJ to first articulate whether, and why, a treating source's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, *i.e.*, the controlling-weight test, and, second, to the extent the treating source's opinion is not entitled to controlling weight, the ALJ must then weigh the regulations' balancing factors—the length of the treatment relationship and the frequency of the examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, the specialization of the source, and any other factors which tend to support or contradict the opinion—to determine the amount of weight the opinion deserves.

*Klusmeier v. Berryhill*, No. 3:16-cv-039, 2017 WL 1066641, at *6 (E.D. Tenn. Mar. 21, 2017).

In the disability decision, the ALJ "shortcut the process," as the ALJ "did not explain whether [Dr. Tran's] opinion[s] [were] entitled to controlling weight or give any indication that [they were] first assessed for controlling weight before moving into the regulatory balancing factors." *Id.* The ALJ did not detail whether the Medical Source Statement and Medical Questionnaire were supported by medically acceptable techniques or inconsistent with other substantial evidence. Rather, the ALJ stated that she assigned little weight to the Medical Source Statement because the opined lifting, carrying, walking, and standing limitations were too optimistic, but that Plaintiff's reported daily activities did not support the opined manipulative restrictions. [Tr. 788]. Similar to *Gayheart*, although the ALJ stated internal inconsistencies existed between Dr. Tran's opinions and Plaintiff's reported daily activities, this factor is properly applied only after the ALJ determined that Dr. Tran's opinions were not entitled to controlling weight. *See* 710 F.3d at 376.

Ultimately, the failure to properly examine whether a treating physician's opinion is entitled to controlling weight, and not providing "good reasons" for the weight assigned to the opinion, hinders a meaningful review of whether the ALJ properly applied the treating physician

14

rule. *See id.* at 377. While the Sixth Circuit has instructed that courts should not hesitate to remand a case when an ALJ fails to adhere to the treating physician rule, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004), remand is not necessary if the violation of the "good reason" rule is harmless. *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011). Error is harmless when:

> (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of [20 C.F.R. § 416.967(c)(2)]. . . even though she has not complied with the terms of the regulation.

*Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (citation omitted). "In the last of these circumstances, the procedural protections at the heart of the rule may be met when the 'supportability' of a doctor's opinion, or its consistency with other evidence in the record, is indirectly attacked via an ALJ's analysis of a physician's other opinions or his analysis of the claimant's ailments." *Id.* (citing *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470–72 (6th Cir. 2006)).

Accordingly, the Court finds that the last of these exceptions is applicable, as although the ALJ did not properly engage in the controlling weight analysis, she provided good reasons for assigning little weight to Dr. Tran's Medical Source Statement and Medical Questionnaire. *See, e.g.*, *Klusmeier v. Berryhill*, No. 3:16-CV-039, 2017 WL 1066641, at *7 (E.D. Tenn. Mar. 21, 2017) ("Although the ALJ did not discuss whether Dr. McElligott's opinion was entitled to controlling weight before balancing the regulatory factors, the ALJ sufficiently explained what weight the opinion deserved and the reasons for that weight, which the Court finds is supported by substantial evidence and makes clear to subsequent reviewers the reason for the assignment of limited weight.").

First, the ALJ properly stated how the opined manipulative restrictions—that Plaintiff could occasionally reach overhead, reach in all other directions, handle, finger, feel, push, and pull with bilateral upper extremities—were inconsistent with Plaintiff's reported daily activities. *See, e.g., Dyer v. Soc. Sec. Admin.*, 568 F. App'x 422, 427 (6th Cir. 2014) (noting that plaintiff's daily activities of "personal hygiene and grooming, cooking, cleaning, laundry, driving, shopping, visiting with friends and family, caring for her ill mother, and taking care of her pet bird" constituted substantial evidence in support of a finding that the plaintiff was not disabled and assigning little weight to treating physician's opinion). The ALJ detailed that Plaintiff reported being able to read the Bible, send text messages, use a computer, drive, and work two days a week.

Although Plaintiff challenges the ALJ's characterization regarding her ability to read the Bible, as she contends that she testified that she only studies the Bible when Jehovah's Witnesses visit her home once a month [Doc. 23 at 6], substantial evidence supports the ALJ's finding that the remaining reported daily activities, such as being able to use a computer and drive, lead to a conclusion that Plaintiff could frequently handle, finger, and feel with both upper extremities. *Cf. Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013) (finding that although the ALJ cited to reported daily activities as evidence that the plaintiff's mental impairments were not as severe as alleged, the record did not support a finding that the plaintiff could perform the cited activities on a sustained basis).

Further, Plaintiff claims that the ALJ conflictingly chose evidence that was allegedly inconsistent with Dr. Tran's opined disabling limitations. However, the Court notes that the ALJ assigned little weight to Dr. Tran's June 13, 2013 Medical Source Statement, in part, because the opined RFC, as well as lifting, carrying, walking, and standing limitations, were too optimistic. The Court finds that the ALJ's review of the medical record provided substantial evidence to

support her finding that Plaintiff's condition worsened in the spring of 2014, as well as the disability onset date. Although Plaintiff would interpret the medical evidence differently, the Court finds that the ALJ's determination was within her "zone of choice." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009); *see also Huizar v. Astrue*, No. 3:07CV411-J, 2008 WL 4499995, at *3 (W.D. Ky. Sept. 29, 2008) ("While plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings.").

Next, with respect to the Medical Questionnaire, the ALJ properly stated that Dr. Tran did not mention any objective medical findings in support of the opinion. *See Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1000 (6th Cir. 2011) (noting the ALJ's notation of the lack of objective findings as a good reason for discounting a treating physician's opinion). Additionally, the ALJ properly found that Dr. Tran's opinion on Plaintiff's disability is an opinion on an issue reserved to the Commissioner, as a treating physician's opinion that their patient is disabled is not "giv[en] any special significance." 20 C.F.R. § 404.1527(e); *see, e.g.*, *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 505 (6th Cir. 2013) ("[A] treating physician's opinion is only entitled to such . . . deference when it is a *medical opinion*. If the treating physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is disabled, unable to work, the claimant's RFC, or the application of vocational factors—his decision need only explain the consideration given to the treating source's opinion. The opinion, however, is not entitled to any particular weight.") (internal citations and quotation marks omitted). Lastly, the ALJ again found that this opinion was inconsistent with Plaintiff's reported daily activities.

Ultimately, a violation of the treating physician rule may be harmless where "the ALJ's analysis meet[s] the goal of the rule even if not meeting its letter." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470–72 (6th Cir. 2006). Here, like in *Nelson*, the reasoning provided by the ALJ demonstrates that Dr. Tran's opinions were found to be inconsistent with other substantial evidence, i.e., the ALJ's significant discussion of the medical record and additional opinions to find that Plaintiff's rheumatoid arthritis significantly worsened in the spring of 2014. The ALJ noted that during an April 17, 2014 visit with Dr. Tran, Plaintiff required increasing doses of prednisone and additional medication to treat her symptoms, and received a referral to an ENT on April 7, 2014 for treatment of chronic dizziness and ear pain. [Tr. 790]. When assigning great weight to Dr. Tran's April 9, 2014 letter, the ALJ reviewed the worsening of Plaintiff's rheumatoid arthritis and symptoms reflected in Dr. Tran's treatment notes, as well as increased medication. [*Id.*]. In contrast, the ALJ previously described Plaintiff's treatment with Dr. Tran from August 2012 through December 2013 as "the record shows [Plaintiff] sought treatment for her rheumatoid arthritis with intermittent flares." [Tr. 785].

The ALJ also compared opinions from Plaintiff's treating physician, Dr. Susan Dowdy, on January 2, 2014 and July 28, 2014. [Tr. 789]. In particular, the ALJ noted "several factors" that suggested Plaintiff's condition had worsened, including that she had begun picking at herself as of May 22, 2014, Plaintiff had increased her Lyrica intake due to worsening symptoms of her peripheral neuropathy, and Plaintiff stated on May 22, 2014 that her arthritis had become so severe that she began using a walker for ambulation. [Tr. 789–90]. Lastly, in the disability decision, the ALJ acknowledged Dr. Tran's treatment relationship with Plaintiff, as well as her specialty as a rheumatologist. [Tr. 790].

Accordingly, the Court finds that although the ALJ failed to first assess Dr. Tran's June 13, 2013 opinions for controlling weight, the ALJ proceeded to provide "good reasons" for the weight assigned to the opinions, and the discussion of the opinions demonstrates to the Court the reasons why Dr. Tran's opinions were assigned little weight. *See, e.g.*, *Klusmeier v. Berryhill*, No. 3:16-CV-039, 2017 WL 1066641, at *10 (E.D. Tenn. Mar. 21, 2017). "Even when considering claims alleging violation of the treating-source rule, we continue to believe that [w]hen remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game." *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 463 (6th Cir. 2005) (internal quotations omitted). Therefore, the goal of the treating physician rule was met, and the ALJ's error with respect to her controlling weight analysis was harmless.

## B.     Remand Order

Plaintiff contends that the "ALJ failed to adequately reconsider Dr. Tran's opinion as directed by the [Court]." [Doc. 23 at 4]. Plaintiff reviews her treatment with Dr. Tran, as well as repeats her claims that the ALJ improperly assigned little weight to Dr. Tran's June 13, 2013 opinions. The Commissioner asserts that "[t]he ALJ's analysis corrects the errors identified by this Court in its remand order." [Doc. 25 at 10].

In adopting Magistrate Judge Guyton's report and recommendation, the Court previously remanded Plaintiff's case "to the ALJ for further consideration of Dr. Tran's opinion and for a new evaluation of plaintiff's residual functional capacity." *Valle v. Colvin*, No. 3:15-CV-388-PLR-HBG, 2016 WL 4536877, at *1 (E.D. Tenn. Aug. 30, 2016). However, in Magistrate Judge Guyton's report and recommendation, the Court noted that the previous ALJ failed to assign a specific weight to Dr. Tran's Medical Questionnaire and Medical Source Statement, as well as "the ALJ 'somewhat' modified the opinion because Dr. Tran had based part of his opinion upon

the Plaintiff's reported activity level, and the ALJ found the Plaintiff was not 'entirely credible.'" *Valle v. Colvin*, No. 3:15-CV-388-PLR-HBG, 2016 WL 4534875, at *4 (E.D. Tenn. July 27, 2016), *report and recommendation adopted by*, 2016 WL 4536877 (E.D. Tenn. Aug. 30, 2016). The Court found that the ALJ improperly failed to explain the specific weight granted to the opinions, what portion of the opinions were modified, or explain why these portions of the opinions were modified. *Id.* at *4–5. Therefore, the Court recommended "that the case be remanded to the ALJ for clarification of the weight accorded to the opinion of Dr. Tran and the reasons for according such weight pursuant to 20 C.F.R. § 404.1527(c)(2)." *Id.* at *5. The Appeals Council subsequently remanded Plaintiff's case "for further proceedings consistent with the order of the [C]ourt." [Tr. 911].

There is "disagreement amongst federal courts as to whether an ALJ's failure to follow the Appeals Council instructions may serve as an independent ground for reversal." *Kearney v. Colvin*, 14 F. Supp. 3d 943, 950 (S.D. Ohio 2014) (collecting cases); *see also Kaddo v. Comm'r of Soc. Sec.*, 238 F. Supp. 3d 939, 943 (E.D. Mich., 2017) (noting "[t]here is no consensus among federal courts regarding whether an ALJ's failure to follow Appeals Council directives in a remand order may serve as independent grounds for reversal, in the absence of some other error"). The Sixth Circuit does not appear to have had the opportunity to address this question, and District Courts within the Sixth Circuit have disagreed on the issue. *Id.*; *see Shope v. Comm'r of Soc. Sec.*, 2015 WL 3823165 at * 8 (S.D. Ohio June 19, 2015) ("The overwhelming majority of courts in this circuit, however, have determined that federal courts lack jurisdiction to consider whether an administrative law judge complied with the Appeals Council's instructions on remand."), *report and recommendation adopted by*, 2015 WL 6155919 (S.D. Ohio Oct. 20, 2015). However, this District has previously held that an ALJ's failure to follow the

dictates of the Appeals Council's instructions constitutes an error requiring remand. *See Salvati v. Astrue*, No. 3:08-cv-494, 2010 WL 546490, at *4–5 (E.D. Tenn. Feb. 10, 2010).

In the present case, however, Plaintiff has not established that ALJ Richardson failed to follow the Appeals Council's instructions in accordance with this Court's remand order. The ALJ assigned a specific weight to Dr. Tran's opinions, and detailed what portions of the opinions were not adopted. Plaintiff repeats her arguments regarding the ALJ's treatment of the Medical Source Statement and Questionnaire, but the Court has found that any error with respect to the ALJ's controlling weight analysis was harmless error. By specifically detailing the weight afforded to Dr. Tran's opinions, as well as providing good reasons for the weight assigned to these opinions, the ALJ "met the directives" of the Appeals Council's order. *Kearney*, 14 F. Supp. 3d at 950. Therefore, the ALJ followed the instructions of the Appeals Council and this Court, and Plaintiff's argument raises no basis for remand in this case.

## V. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 22**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 24**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

Debra C. Poplin
United States Magistrate Judge